UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANITA LOUISE GOODEN, | ) No. CV 15-9202-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 25, 2015, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on December 11, 2015, and December 30, 2015. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on October 11, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on October 8, 1959. [Administrative Record ("AR") at 112.] She has past relevant work experience as a restaurant baker and a hostess/food server. [AR at 28, 52.]

On February 9, 2013, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since February 1, 2012. [AR at 23, 112-13.] After her application was denied, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 23, 70-71.] A hearing was held on August 4, 2014, at which time plaintiff appeared without an attorney or representative, and testified on her own behalf. [AR at 23, 41-53.] A vocational expert ("VE") also testified. [AR at 50-52.] On September 10, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from February 1, 2012, the alleged onset date, through September 10, 2014, the date of the decision. [AR at 23-28.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 18-19.] When the Appeals Council denied plaintiff's request for review on September 25, 2015 [AR at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 1, 2012, the alleged onset date.[1] [AR at 25.] She also determined that although plaintiff had worked after the alleged onset date as a caregiver for her mother, that work activity did not rise to the level of substantial gainful activity. [Id.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the back, obesity, and correctable vision. [Id.] She found plaintiff's impairments of hypertension and hyperthyroidism to be non-severe. [AR at 26.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. [AR at 25.]

4

1  [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to
2  perform medium work as defined in 20 C.F.R. § 404.1567(c),[3] "except for any work involving more
3  than frequent climbing, balancing, stooping, kneeling, crouching or crawling." [Id.] At step four,
4  based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to
5  perform her past relevant work as a restaurant baker and as a hostess/food server, as actually
6  and generally performed. [AR at 28, 52.] Accordingly, the ALJ determined that plaintiff was not
7  disabled at any time from the alleged onset date of February 1, 2012, through September 10,
8  2014, the date of the decision. [AR at 32.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) failed to properly consider plaintiff's pain and symptom testimony; and (2) failed to consider plaintiff's physical therapist's opinion. [Joint Submission ("JS") at 4.] As set forth below, the Court agrees with plaintiff, and remands for further proceedings.

### A.  SUBJECTIVE SYMPTOM TESTIMONY

#### 1.  The ALJ's Determination

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." [AR at 27.] She based this determination, in part, on her finding that "the medical evidence does not support

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

1 [plaintiff's] allegations." [Id.] The ALJ also "emphasized" that although plaintiff testified that she
2 is "having difficulty performing her duties as an in-home caretaker, . . . [she] is still able to perform
3 this job 22 hours a week and engage in various exertional activities such as cooking, cleaning,
4 shopping, doing the laundry, carrying groceries, and driving a car." [AR at 27-28 (citations
5 omitted).]

### 2. Legal Standard

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."[4] Lingenfelter v. Astrue, 504 F.3d 1028,

---

[4] On March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted) ("SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations."). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The ALJ's 2014 decision was issued before March 28, 2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen v. Chater, 80 F.3d 1273, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively)). Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations. However, because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, and neither party contends that SSR 16-3p should apply herein [see JS at 5 n.1 (plaintiff "does not contend that [SSR 16-3p] defeated any reliance on [SSR 96-7p]," 10 (defendant analyzes plaintiff's issue under the standards of SSR 96-7p)], the Court
(continued...)

1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not find evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his or her ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4 (capitalization omitted). In addition to considering all of the evidence, factors to be considered in weighing a claimant's subjective symptom testimony under either SSR 16-3p or 96-7p include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; SSR 96-7p; 20 C.F.R. § 404.1529(c); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (discussing other factors that may be considered in assessing *credibility*, including (1) ordinary techniques of credibility evaluation, such as reputation for lying, prior inconsistent statements, and other testimony that appears less than candid; and (2) unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 26-28], the ALJ's reasons for rejecting plaintiff's subjective symptom statements must be specific, clear and convincing.

---

⁴(...continued)
need not resolve the retroactivity issue. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

### 3. Analysis

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4-9.] She notes that if her testimony were accepted as true, then she would be limited to an RFC for sedentary work and would be considered disabled under the "Social Security 'grid' rules," as she was 54 years old on the date of the decision. [JS at 9 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.06).]

#### a. Objective Medical Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a

claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted). The "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted); Brown-Hunter, 806 F.3d at 493. Here, the ALJ first discussed plaintiff's testimony, noting plaintiff's statements that she cannot do her duties as a caregiver anymore due to her back pain; that it is becoming harder to do her caregiver job because she has difficulty with standing and walking for more than very minimal amounts; that the back pain radiates down her leg; and that she has tried physical therapy "but it did not help very much." [AR at 27.] The ALJ then generally discussed the objective medical record. [Id.] Next, she stated her conclusion that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," plaintiff's testimony was "not entirely credible for the reasons explained in the decision." [Id.] The ALJ then provided her reasons for finding plaintiff "not entirely credible": (1) plaintiff had "only very minimal treatment . . . , all of it for occasional routine monitoring of [her] hyperthyroidism and chronic low back pain"; (2) the October 2012 and July 2013 imaging studies showed "at most, mild to some moderate degenerative changes"; (3) "the evidence confirms [plaintiff] did benefit somewhat from physical therapy" [but see discussion infra regarding the ALJ's treatment of the physical therapist's report]; (4) although Dr. Afra's consultative evaluation "noted a limited range of motion in the low back, it was also observed [plaintiff] was able to walk without difficulty"[5]; and (5) plaintiff's hypertension and hyperthyroidism are clearly well-controlled with medication, and plaintiff did not testify that these conditions cause any symptoms. [AR at 27-28 (citation omitted).] The ALJ failed to "identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted); Brown-Hunter, 806 F.3d at 493. While the first four "reasons" given by the ALJ to support her finding that plaintiff is "not entirely credible" tend to support her conclusion that plaintiff suffers from medically determinable impairments that "could reasonably

---

[5] Dr. Afra opined that plaintiff is capable of performing medium exertion work with no more than frequent postural activities. [See AR at 216.]

be expected to cause the alleged symptoms," she fails to link the reasons given to plaintiff's actual testimony.

For instance, the ALJ does not explain how the facts that plaintiff receives treatment, however "minimal," for her "*chronic* low back pain," that the imaging studies show "mild to *some moderate* degenerative changes" [AR at 27 (emphasis added)], or that Dr. Afra found that plaintiff's range of motion in her low back was "limited" [id.], are somehow inconsistent with plaintiff's testimony. The ALJ also implies that plaintiff's testimony that physical therapy "did not help very much" is belied by some unspecified evidence allegedly confirming that plaintiff "*did* benefit *somewhat* from physical therapy." [AR at 27-28.] However, "somewhat" benefitting from physical therapy does not appear to be qualitatively different from asserting that physical therapy "did not help very much," for purposes of evaluating plaintiff's subjective symptom testimony/credibility. In fact, a review of the physical therapy reports shows some decrease in pain from a constant 8/10 at her initial evaluation to a range of pain between 3 and 8/10 at later sessions, as well as some improvement in lumbar spine flexion and extension, but the records also reflect continued pain, discomfort, and limitations with prolonged standing and walking. [See, e.g., AR at 298-309; discussion infra part V.B.] Plaintiff also reported that she felt relief for about a day after her physical therapy treatment, but then her symptoms would return [AR at 300], and although her symptoms had improved, her "pain comes back" when she stands. [AR at 305.] On October 21, 2014, plaintiff reported to the therapist that she could "now walk 1.5 blocks before pain onset, was .5 block previously" [AR at 306], and two weeks later she reported that she was "having increased low back pain," and was unable to tolerate the therapeutic exercises, as she had to stand on the bus on the way to her treatment. [AR at 307, 308.] On November 11, 2014, when she had been able to sit on the bus on the way to her session, her pain "wasn't too bad," and she reported it as a 4/10 across the back of her hips and her low back. [AR at 308.] Thus, while plaintiff did obtain some benefit from physical therapy, the ALJ appears to have selectively relied on a few statements in the physical therapy records to support her finding, and failed to mention the more restrictive statements also included in those records. Finally, with respect to the ALJ's final reason, the fact that plaintiff did *not* testify that her hypertension and hyperthyroidism cause

any symptoms, might actually lead to an inference that plaintiff was not attempting to exaggerate her symptoms, not that her statements were "not entirely credible."

In short, the ALJ's stated reasons for finding that the objective medical evidence did not support plaintiff's subjective symptom statements, or were a reason to find her "not entirely credible," are not sufficiently specific for the Court to conclude that the ALJ did not arbitrarily discredit plaintiff's testimony, nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### b. Daily Activities

The ALJ found that although plaintiff testified that she is "having difficulty performing her duties as an in-home caretaker, . . . [she] is still able to perform this job 22 hours a week and engage in various exertional activities such as cooking, cleaning, shopping, doing the laundry, carrying groceries, and driving a car." [AR at 27-28 (citations omitted).] Plaintiff contends that the daily activities she testified to "do not exceed the limitations" she identified, and that in order to be found disabled, she does not have to "vegetate in a dark room excluded from all forms of human and social activity." [JS at 8 (citations omitted).] She also points to her testimony that she "needed to pay for outside help to clean her mother's apartment in order to pass inspections" as evidence of her limitations. [JS at 8 (citing AR at 46).]

An ALJ may rely on a claimant's daily activities to discount subjective symptom testimony when those activities: (1) "contradict [the claimant's] other testimony"; or (2) "meet the threshold for transferable work skills." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). As a result, a plaintiff's credibility may be discounted if she "is able to spend a substantial part of [her] . . . day

1 performing household chores or other activities that are transferable to a work setting." Smolen,
2 80 F.3d at 1284 n.7. A claimant, however, need not be "utterly incapacitated to be eligible for
3 benefits . . . and many home activities are not easily transferable to what may be the more
4 grueling environment of the workplace, where it might be impossible to periodically rest or take
5 medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted); Gallant v.
6 Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (an ability to engage in some physical activities is
7 not necessarily inconsistent with a finding of disability). "Even where those activities suggest
8 some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the
9 extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112
10 (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r
11 Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). An ALJ must identify "*which* daily activities
12 conflicted with *which* part of [c]laimant's testimony," and point to *specific facts* in the record to
13 support an adverse credibility finding. Burrell, 775 F.3d at 1138.

14 Thus, the ALJ was entitled to rely on the fact that plaintiff engaged in part-time work as a
15 caregiver for 22 hours a week as a reason to discount her testimony. See 20 C.F.R. § 404.1571
16 ("Even if the work you have done was not substantial gainful activity, it may show that you are able
17 to do more work than you actually did."); Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ
18 made specific findings in support of decision to discount the claimant's testimony, including that
19 she "recently worked as a personal caregiver for two years"); Huizar v. Comm'r, 428 F. App'x 678,
20 680 (9th Cir. 2011) (ALJ reasonably found that claimant's "ability to continue working was
21 inconsistent with her testimony about the severity of her impairments"). Moreover, the ALJ also
22 noted that plaintiff's work as a caregiver included such activities as cooking, cleaning, shopping,
23 laundry, carrying groceries, and driving a car. [AR at 28.] Plaintiff argues that her severe
24 limitations are demonstrated by the fact she needed to pay for outside help to clean the apartment
25 in order to pass inspections. [JS at 8 (citing AR at 46).] In fact, however, plaintiff testified that she
26 needed extra help when there was "an inspection coming up and the apartment needs a *really*
27 *good cleaning* and I can't do that." [AR at 46 (emphasis added).] Plaintiff did not specifically
28 testify that she is unable to do routine everyday cleaning. But plaintiff testified in her Exertion

1 Questionnaire that she "usually stretch[es] chores out," at one room per day, and that she has to
2 "stop more frequently due to pain," and that some tasks, such as sweeping or mopping, cause
3 immediate pain and she is forced to stop after 2-3 minutes. [AR at 177-78.] She also stated that
4 it is "getting harder and harder to do my job, and to be perfectly honest with you, I believe the only
5 reason why I am still working is because I work for my mother." [AR at 48.]

6 Plaintiff's ability to work as a caregiver for her mother for 22 hours a week, and perform
7 some limited household chores and other activities in relation to that occupation, do not
8 necessarily translate into an ability to perform medium-level exertional work on a full-time basis.
9 See, e.g., Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly
10 asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery
11 shopping, driving a car, or limited walking for exercise, does not in any way detract from her
12 credibility as to her overall disability."); see also Gonzales v. Sullivan, 914 F.2d 1197, 1201 (9th
13 Cir. 1990) (holding that daily activities may not be relied upon to support an adverse credibility
14 determination unless the ALJ makes explicit how plaintiff's ability to perform those activities
15 translates into the ability to perform appropriate work activities on an ongoing and daily basis).
16 Indeed, when the ALJ asked plaintiff why "working half time . . . [and] the activities you do with
17 your mother . . . [are] so different from, for instance, doing work as a hostess," plaintiff replied that
18 the hostess/food server job required constant standing and walking, and she just "cannot do that.
19 I can't just stand." [AR at 49.] Moreover, although the ALJ "emphasized" that plaintiff "is still able"
20 to perform the caregiver job "22 hours a week and engage in various exertional activities such as
21 cooking, cleaning, shopping, doing the laundry, carrying groceries, and driving a car," she never
22 explained how those chores or other activities are transferable to a work setting or otherwise
23 contradict plaintiff's subjective symptom testimony.

24 Based on the foregoing, this reason for discounting plaintiff's subjective symptom
25 complaints was not "sufficiently specific" to allow this Court to conclude that the ALJ discounted
26 plaintiff's testimony on permissible grounds and did not arbitrarily discredit plaintiff's testimony
27 regarding pain.

28 Remand is warranted on this issue.

B.    **PHYSICAL THERAPIST'S REPORT**

Plaintiff's records reflect approximately 17 physical therapy sessions between May 19, 2014, and November 20, 2014. [AR at 298-309.] In plaintiff's November 20, 2014, discharge summary, the physical therapist noted that plaintiff "continues to have poor standing tolerance," and that she had been educated on "avoiding prolonged static postures." [AR at 309.] In her decision, the ALJ acknowledged that an August 1, 2014, physical therapy progress report indicated that although plaintiff had shown "some improvement," she "continued to experience difficulty with prolonged walking and standing activities." [AR at 27.] The ALJ also noted that "the evidence confirms [plaintiff] did benefit somewhat from physical therapy." [AR at 27-28.] Plaintiff complains that the ALJ does not mention the therapist's "recommendation that [plaintiff] avoid prolonged static postures," and failed to provide any meaningful discussion or analysis of this statement. [JS at 18-19.] She also argues that because she was unrepresented at the hearing, the ALJ had the "duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." [JS at 209 (citation omitted).]

Preliminarily, plaintiff contends, and the Commissioner agrees, that a physical therapist is not an "acceptable medical source," but instead, an "other source," and that evidence from other sources may be used where it is "'based on special knowledge of the individual' and provides insight." [JS at 19, 21-22 (citations omitted).] The fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" SSR 06-03p, 2006 WL 2263437. In contrast, a physical therapist is not generally considered to be an acceptable medical source (see 20 C.F.R. § 404.1513(d)(1) (including therapist as an "other" medical source)), and "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources, whose medical opinions may be entitled to controlling weight." See SSR 06-03p (citations omitted). Nevertheless, evidence from "other medical" sources, that is, lay evidence, can demonstrate the "severity of the individual's impairment(s) and how it affects the individual's ability to function." Id. The Social Security

Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." Id. Therefore, according to the Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." Id.

Relevant factors when determining the weight to be given to an "other" medical source include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairments; and any other factors that tend to support or refute the opinion. Id. Thus, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source . . . .'" Id. (emphasis added).

The Court finds that such may be the case here. The physical therapist's statements that plaintiff had been educated on avoiding prolonged static postures, and had an "improved awareness of body mechanics and need to avoid painful positions" [AR at 309], at least implied that plaintiff has some physical work-related limitations. The physical therapist also stated that plaintiff "has low standing tolerance" and, as acknowledged by the ALJ, the report clearly reflected that plaintiff had "difficulty with prolonged walking and standing activities." [AR at 27, 309.] The physical therapist's statements, therefore, appear to conflict with the opinion of the consultative examiner and the State Agency medical consultant -- whose assessments pre-dated the physical therapy records -- that plaintiff was capable of medium work; with the ALJ's RFC determination, which seemingly relied on the opinions of the consultative examiner and the medical consultant that plaintiff was capable of medium work; and with the ALJ's own determination that plaintiff could perform her past relevant work as a hostess/food server (light work), or a restaurant baker

15

(medium work), as actually or generally performed, each of which would require walking or standing for at least six hours of an eight-hour workday, i.e., *prolonged* walking or standing. See Dictionary of Occupational Titles Nos. 311.477.030, 313.381-010. In fact, plaintiff testified that as she actually performed the hostess/food server job, she had "to stand up constantly," and there was no area to sit. [AR at 49.] While an ALJ is not required to address all evidence presented to her, she must explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted). Here, the ALJ acknowledged the physical therapy evidence but did not explain why the significant and probative statements of the therapist as to plaintiff's ability to stand and need to "avoid[] prolonged static postures," had been ignored and, therefore, implicitly rejected.

Remand is warranted on this issue.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

proceedings. First, because the ALJ failed to provide specific and legitimate reasons for ignoring the "other source" statements of plaintiff's physical therapist, the ALJ on remand shall reassess those statements, as well as reconsider the medical record as a whole. Next, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a hostess/food server and a baker. If plaintiff is not so capable, then the ALJ should proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 28, 2016

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE